# OPELOUSAS,

##### IN

# SEPTEMBER, 1851.

JUDGES PRESENT.*

Hon. GEORGE EUSTIS, *Chief Justice.*
Hon. PIERRE ADOLPHE ROST, } *Associate Justices.*
Hon. ISAAC T. PRESTON.

## THOMAS KELLAR *v.* F. BELLEANDEAU et al.

Where a preëmption has been once claimed on a certain tract of land, the claim cannot be transferred to another tract of land.

Settlers upon the public lands of the United States are not trespassers, the Government of the United States having, by the various preëmption laws, encouraged the settlement of the public lands.

APPEAL from the District Court of St. Landry, *Cushman,* J.

*E. L. Swayze,* for plaintiff.   *B. F. Linton,* for defendants.   The judgment of the court was pronounced by

PRESTON, J. *Anthony Read* in 1836 gave notice to the land office of the United States at Opelousas, of his intention to purchase by right of preëmption, the quarter section of public land on which he resided, and complied with the requisitions of the act of Congress of 1834, under which he made the application to purchase. The land was not then surveyed; but he believed it to be, and so stated, the south west quarter of section No. 26, township No. 3, south of the thirty-first degree of north latitude of range No. 1, west of the basis meridian.

He shortly afterwards departed this life, and the probate judge, in pursuance of an order of the court, proceeded to his last residence in the Pine Prairie and sold "the preëmption right to a quarter section of land on which the deceased last resided, lying in the Pine Prairie, it being explained that no payment had been made to government; it was sold to Thomas Kellar for $311 50."

On the 15th of January, 1846, *F. Belleandeau fils* made application to the land office for the purchase, by preëmption, of the quarter section of public land on

which he resided; immediately afterwards, *Kellar* brought a possessory action against him and others, for the land which they possessed, being the tract which *Belleandeau* was attempting to enter. A verdict and judgment was rendered in favor of the defendant in October, 1846.

In May, 1847, *Kellar* brought the present petitory action for the same land, against the defendants; he described it, however, as being "the north east quarter of section 34, in township 3, south of range No. 1 west, or such other quarter section in said township, as may include the improvements of *Anthony Read*, deceased."

The defendants answered, denying plaintiff's title, and alleging, that no title could be made by the United States until the lands were surveyed. The court, on the application, ordered a survey by the parish surveyor, which was executed in May, 1848; and it was found that the last dwelling-house of *Anthony Read*, and which there is no doubt he occupied at the time he made the application to purchase by preëmption, was situated on the south west quarter of section 34, and that the dwelling-house of *Belleandeau* and other defendants, and their lime-kilns were on the south east quarter of the section. The first house occupied by *Read*, and some improvements, especially a lime kiln, were also on the south east quarter of the section.

A few days before the institution of the present suit, and no doubt in consequence of investigations growing out of the possessory action, the plaintiff applied to the land office, to change his location from that described in his application to purchase in 1836, to the quarter section of land in controversy. It appears that the land officers changed the location. The proceeding was *ex parte* as to the defendants, and based upon *ex parte* affidavits. It was not, therefore, binding upon them. It was based upon a provision in the act of 1834, under which the application of *Read* to purchase by preëmption was made, which provision was limited to six months in its operation. The act of 1834 had itself expired ten years before the application to change the location under it. A law of 1819 was also invoked. We do not think it applied to the case; even if it did, the limitation in the act of 1834 superseded it.

The quarter section on which *Read* established his house and last residence, is the one which his application to purchase by preëmption embraced. It is the one which was sold at the probate sale of his estate; and even admitting that sale to be valid, though it is doubtful under the decision of this court, in the case of *Seaton* v. *Sharkey*, 3d Ann., 332, still, the vendee never could change the location of the preëmption, and therefore has no title whatsoever to the land in controversy. He cannot, therefore, maintain a petitory action for it. Even if he had some pretence of title, we cannot admit that the defendants are mere trespassers as contended, incapable of setting up their possession against an imperfect title. They are certainly not trespassers as to him, for they obtained judgment in their favor against his possessory action some years ago. Nor do we consider them trespassers as to the United States; for the government had, by laws, from its commencement to the present time, encouraged actual settlements upon the public lands, and have rewarded them with preëmptions, thus devoting wild lands to the only objects to which they should be destined by a good government, not speculation; but actual settlement, improvement and cultivation.

This view of the subject renders it unnecessary to examine the bills of exceptions.

The judgment of the district court is affirmed, with costs.